Bobi TREMELLING and Joseph
Brang, Plaintiffs,

v.

OGIO INTERNATIONAL, INC.,
et al., Defendants.

No. 2:95cv–1059W.

United States District Court,
D. Utah,
Central Division.

March 14, 1996.

Kristen B. Jocums, Salt Lake City, UT, for Plaintiffs.

James W. Stewart, and Lewis M. Francis, Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, for Defendants Pratt and Zito.

*MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS PRATT'S AND ZITO'S MOTIONS TO DISMISS*

WINDER, Chief Judge.

This matter is before the court on Defendants Michael J. Pratt's ("Pratt") and Pamela Zito's ("Zito") motions to dismiss the Plaintiff Bobi Tremelling's ("Tremelling") complaint against these two Defendants in their individual capacities.

Oral argument was held on this matter on March 7, 1996. At oral argument Pratt and Zito were represented by James W. Stewart and Lewis M. Francis, while Tremelling was personally present and represented by Kristen B. Jocums. Prior to oral argument, the court carefully considered the memoranda and other materials submitted by the parties. The court had also read a number of the cases cited by the parties. The court has further considered the law and facts related to the motion and having now fully considered the issues in this case, and good cause appearing, the court enters the following Memorandum Decision and Order.

## I. BACKGROUND

The following facts are derived from Tremelling's complaint and are assumed true for purposes of determining the motions to dismiss.

Beginning in the fall of 1992 Tremelling utilized an employment agency, Staffing Solutions, L.C. ("Staffing Solutions"), to obtain temporary positions with a number of employers. Tremelling alleges that for approximately two years, Staffing Solutions referred her to steady jobs paying higher than minimum wages. In November of 1992 Staffing Solutions referred Tremelling to a position with Ogio International Inc. ("Ogio") working in its warehouse. Tremelling worked for Ogio until September 7, 1994, when she was terminated because of her romantic relationship with her co-worker, and now co-plaintiff, Joseph Brang ("Brang").

Tremelling alleges that Ogio and Staffing Solutions engaged in several unlawful employment practices during and after her employment with Ogio. First, Tremelling alleg-

es that during her temporary employment with Ogio she continually sought full-time employment status, but was told by Ogio supervisors that Ogio would not employ women full-time in its warehouse. Tremelling alleges that she reported Ogio's discriminatory conduct to Staffing Solutions and that Staffing Solutions failed to take any measures to remedy the situation. In addition, Tremelling alleges that she was terminated from her employment with Ogio because she was having a romantic relationship with her co-worker Brang, even though other employees were not terminated for the same conduct. Tremelling further alleges that following her termination from Ogio she attempted to regain her temporary position, but was told by Ogio management that she would not be rehired because the company was attempting to eliminate older workers.

On January 17, 1995, Tremelling filed a complaint against both Ogio and Staffing Solutions with the Utah Anti–Discrimination Division ("UADD"). Brang alleges that within ten days of Tremelling's complaint, Ogio terminated him in retaliation for his support of Tremelling in filing her discrimination complaint. Brang then filed his own complaint with the UADD charging Ogio with retaliatory discrimination.

Tremelling finally alleges that following her termination from Ogio, she returned to Staffing Solutions to obtain new job referrals. She alleges that Staffing, rather than referring her to high-paying and steady positions like before, only referred her to two low-paying positions of limited potential. Tremelling further alleges that Ogio and/or Staffing Solutions misrepresented Tremelling's capabilities to a potential employer and that Staffing Solutions eventually stopped giving her any new job referrals.

In their Amended Complaint, Tremelling and Brang purport to state claims that (1) Tremelling was discriminated against by Ogio and Staffing Solutions on the basis of her sex, (2) Brang was wrongfully terminated, (3) Tremelling was discriminated against by Ogio and Staffing Solutions in retaliation for her filing a complaint of discrimination, (4) Brang was discriminated against by Ogio in retaliation for supporting Tremelling in

her filing a complaint of discrimination, (5) Tremelling was discriminated against by Ogio on the basis of her age, and finally (6) Tremelling was the victim of a civil conspiracy by Ogio, Staffing Solutions, Pratt as an individual, and Zito as an individual. The present motions to dismiss only involve Tremelling's claim of civil conspiracy against Pratt and Zito as individuals.

## II.  STANDARD OF REVIEW

In determining whether to grant a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept all well-plead facts as true. *Arnold v. McClain*, 926 F.2d 963, 965 (10th Cir.1991). In addition, all inferences that can be drawn from the allegations must be drawn in favor of the plaintiff. *Id.* at 965. "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailable one." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (citation omitted) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

## III.  DISCUSSION

Although a number of issues are initially raised by Pratt and Zito in their memoranda, it is clear in Tremelling's memorandum in opposition and the Defendants' replies that the only contested issue is whether there is a viable claim of civil conspiracy against Pratt and Zito as individuals. The Defendants claim that there is no viable claim because (1) the common law claim of civil conspiracy is preempted by the Utah Anti–Discriminatory Act and (2) the complaint does not allege all of the essential elements to make a claim for civil conspiracy. The court will first address whether the civil conspiracy claim is preempted, and then turn to whether the claim is sufficiently plead.

### A. Utah Anti–Discriminatory Act Pre-emption

■ The first issue is whether the Utah Anti–Discriminatory Act (the "UADA") preempts Tremelling's claim of civil conspiracy against Pratt and Zito as individuals. The UADA provides that the "procedures contained in this section are the exclusive remedy under state law for employment discrimination based upon race, color, sex, *retaliation*, pregnancy, childbirth, or pregnancy-related conditions, age, religion, national origin, or handicap." Utah Code Ann. § 34–35–7.1(15) (1994) (emphasis added).

■ In *Retherford v. AT & T Communications*, 844 P.2d 949 (Utah 1992), the court addressed the extent to which employer retaliation against employees complaining of discrimination is within the preemptive scope of the UADA. The court held that a common law claim is preempted if "retaliation"[1] is an indispensable element of the common law claim or, in other words, if the plaintiff would be unable to maintain the claim without alleging retaliatory harassment. *Id.* at 967; *see also, Sexual Harassment, Retaliatory Discharge, and Common-Law Causes of Action,* 1994 Utah L.Rev. 389. Applying this indispensable element test, the court held that the plaintiff's claim for violation of public policy was preempted because in order to allege violation of public policy she would have to allege that the UADA's prohibition of retaliatory discrimination—the source of public policy—was violated. *Id.* at 966. On the other hand, the court held that the plaintiff's claims for breach of implied contract, intentional infliction of emotional distress, tortious interference with contract, and negligent employment—even though based on the exact same conduct which constituted retaliation—were not preempted because the plaintiff would not have to allege a violation of the UADA's prohibition of retaliation in order to maintain these claims.[2]

■ The common law claim at issue in the present case is civil conspiracy. In order to maintain a claim for civil conspiracy, Tremelling must allege (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the

**1.** The UADA defines "retaliate" as "the taking of adverse action by an employer [or] employment agency ... against one of its employees ... because he has opposed any employment practice prohibited under this chapter or because he has filed charges, testified, assisted, or participated in any way in any proceeding, investigations, or hearing under this chapter." Utah Code Ann. § 34–35–2(17) (1994). The UADA further provides that it is a "discriminatory or prohibited employment practice for an employer to ... retaliate against, harass, or discriminate in matters of compensation or in terms, privileges, and conditions of employment." Utah Code Ann. § 34–35–6(1)(a)(i) (1994).

**2.** Under the "indispensable element" test it does not matter whether the alleged conduct would support both a retaliation claim and another common law claim. This is illustrated by the fact that the *Retherford* Court found that the plaintiff's claims for breach of implied contract, intentional infliction of emotional distress, tortious interference with contract, and negligent employment were not preempted even though these claims were based on conduct which fell within the scope of retaliatory harassment as defined by the UADA. In order to find that a common law claim is preempted, the common law claim must *require* that the plaintiff plead and prove that the defendant's conduct was in retaliation for the plaintiff's opposition to discrimination. If the common law claim is based on the same conduct as a retaliation claim, but does not require a retaliatory motive it is not preempted. As the court explained:

> Noticeably absent from this list of the indispensable elements of the four claims is an injury that is a target of the UADA: retaliation for complaints of sexual harassment. While it is true that all four claims arise out of defendants' retaliatory conduct, preemption depends on the nature of the injury, not on the nature of the conduct allegedly responsible for that harm.

*Id.* at 967. For example, in *Retherford,* the plaintiff's common law claim for intentional infliction of emotional distress overlapped with the plaintiff's retaliation claim. The exact same conduct, cruel acts by her supervisors and co-workers, supported both a retaliation claim and Retherford's claim for emotional distress. However, she did not have to plead that the conduct was the result of a retaliatory motive in response to her complaints about discrimination in order to maintain her emotional distress claim. Emotional distress is a proper claim whether the bad conduct is in response to retaliation for sex discrimination complaints, retaliation for complaints unrelated to discrimination, or even if the tortfeasor acts for a non-retaliatory purpose, or no purpose at all. Therefore, a claim for emotional distress does not include the "indispensable element" of retaliation and is not preempted by the UADA.

object or course of actions; (4) one or more unlawful, overt acts; and (5) damages as a proximate result thereof. *Israel Pagan Estate v. Cannon,* 746 P.2d 785 (Utah App. 1987). The problematic element is number (4), one or more unlawful acts. In her Amended Complaint, Tremelling sets forth her theory of civil conspiracy in very little detail. She alleges that there was a conspiracy, involving Zito and Pratt, to "deprive her of her civil rights and to prevent her from becoming re-employed, in violation of public policy." Amended Complaint, p. 9, para. 64. If the "unlawful act" supporting her civil conspiracy claim is a violation of public policy, then the Utah Supreme Court in *Retherford* has already ruled that such a claim would be preempted because the source of public policy is the UADA's prohibition of retaliatory discrimination and, therefore, retaliation is an indispensable element of the public policy tort. Likewise, if the "unlawful act" is a deprivation of civil rights, then the *Retherford* public policy analysis applies: such a claim would be preempted because the source of civil rights is the UADA's prohibition of retaliation and, consequently, retaliation is an indispensable element of the civil conspiracy tort.

■ At oral argument the court specifically asked Tremelling's counsel to identify any other "unlawful act(s)" supporting Tremelling's claim of civil conspiracy. Tremelling's counsel responded that Pratt and Zito had engaged in tortious interference with Tremelling's potential economic relations with other employers by making negative comments about Tremelling's qualifications to those potential employers. In order to state a claim for tortious interference with potential economic relations, Tremelling would have to allege that (1) Pratt and Zito interfered with Tremelling's potential economic relations (2) for an improper purpose or by improper means, and (3) causing injury to Tremelling. *Leigh Furniture & Carpet Co. v. Isom,* 657 P.2d 293, 302 (Utah 1982).

■ The "improper means" prong of the tortious interference with economic relations claim is satisfied "where the means used to interfere with a party's economic relations are contrary to law, such as viola-

tions of statutes, regulations, or recognized common-law rules. Such acts are illegal or tortious in themselves and hence are clearly 'improper' means of interference." *Id.* at 308. In other words, "improper means" to support a tortious interference with economic relations claim is synonymous with "unlawful acts" to support a civil conspiracy claim. The only "improper means" which Tremelling alleges in her complaint are violations of public policy and civil rights laws which are preempted by the UADA, as discussed above.

■ As an alternative to "improper means," Tremelling could also rely on the "improper purpose" prong to satisfy her allegation of tortious interference with economic relations. "The alternative of improper purpose will be satisfied where it can be shown that the actor's predominant purpose was to injure the plaintiff." *Id.* at 307. Importantly, the "improper purpose" prong only requires that Tremelling plead and prove that Pratt and Zito acted with the predominant purpose of injuring Tremelling but does not require that Tremelling plead and prove that this predominant purpose was motivated by retaliation for Tremelling's complaints about discrimination. Because Tremelling could rely on the "improper purpose" alternative to satisfy her allegation of tortious interference with economic relations and the "improper purpose" alternative does not include the indispensable element of retaliatory harassment, the common law claim of tortious interference with economic relations is not preempted. Consequently, Tremelling may properly rely on tortious interference with economic relations, via an "improper purpose," as the "unlawful act" supporting her claim of civil conspiracy.

In sum, the court concludes that to the extent that Tremelling relies on public policy violations or civil rights violations as "unlawful acts" to support her civil conspiracy claim, such claim is preempted by the UADA. However, to the extent that Tremelling relies on the "improper purpose" alternative of tortious interference with economic relations to support her civil conspiracy claim, such claim is not preempted by the UADA. Because tortious interference with economic relations

is the only "unlawful act" not preempted by the UADA, it is the only "unlawful act" the court will discuss in regard to Pratt's and Zito's argument that Tremelling has not met the pleading requirements for civil conspiracy.

### B. Civil Conspiracy Pleading Requirements

 As noted above, in order to plead a prima facie case for tortious interference with potential economic relations Tremelling must allege that (1) Pratt and Zito interfered with her potential economic relations (2) for an improper purpose or by improper means, and (3) causing injury to Tremelling. *Leigh Furniture & Carpet Co. v. Isom,* 657 P.2d 293, 302 (Utah 1982). The only allegation that Tremelling makes regarding any interference with her potential economic relations, the first element of tortious interference with economic relations, is that "[b]ased on a conversation with a potential employer from one of these after-the-charge referrals, Tremelling felt that Ogio and/or Staffing had misrepresented her capabilities and cost her at least another position." Because this allegation is not aimed at Pratt and Zito, it cannot be the basis of a claim of tortious interference with economic relations against Pratt and Zito as individuals.[3] Because Tremelling has failed to plead the elements of tortious interference with economic relations against Pratt and Zito, she cannot rely on that tort as an "unlawful act" supporting her claim for civil conspiracy against Pratt and Zito. Accordingly, Tremelling's complaint against Pratt and Zito as individuals is dismissed.

### IV. ORDER

Accordingly, based on the foregoing and good cause appearing, IT IS HEREBY ORDERED that:

1. The Defendants Pratt's and Zito's motions to dismiss Plaintiff Tremelling's complaint against them as individuals is granted.

2. This Order shall serve as the order of the court and no further order need be prepared by counsel.

---

**3.** If in the course of discovery Tremelling uncovers any facts implicating Pratt and Zito, as individuals, in a civil conspiracy involving tortious interference with Tremelling's potential economic relations, Tremelling could bring a motion to amend her complaint and the court would entertain such a motion.